## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DAEDALUS PRIME LLC,** | |
| **Plaintiff,** | **Civil Action No.** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MAZDA MOTOR CORPORATION,** **MAZDA NORTH AMERICAN** **OPERATIONS,** **MAZDA MOTOR OF AMERICA, INC.,** **MERCEDES-BENZ GROUP AG,** **MERCEDES-BENZ AG,** **MERCEDES-BENZ USA, LLC,** **QUALCOMM INC.,** **QUALCOMM TECHNOLOGIES, INC.,** **VISTEON CORPORATION,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Daedalus Prime LLC ("Daedalus") files this Complaint against Defendants

Mazda Motor Corporation, Mazda North American Operations, and Mazda Motor of

America, Inc. (collectively, "Mazda"), Mercedes-Benz Group AG, Mercedes-Benz AG, and

Mercedes-Benz USA, LLC (collectively, "Mercedes"), Qualcomm Inc. and Qualcomm

Technologies, Inc. (collectively, "Qualcomm"), and Visteon Corporation ("Visteon") (all

collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action brought against Defendants for infringement of Daedalus's U.S.

Patent Nos. 8,775,833 ("the '833 patent"); 8,898,494 ("the '494 patent"); 9,575,895 ("the '895

patent"); 10,049,080 ("the '080 patent"); 10,394,300 ("the '300 patent"); and 10,705,588 ("the

'588 patent") (collectively, "the Patents-In-Suit") under the patent laws of the United States.

1

2.      The '833 patent is attached as Exhibit 1.

3.      The '494 patent is attached as Exhibit 2.

4.      The '895 patent is attached as Exhibit 3.

5.      The '080 patent is attached as Exhibit 4.

6.      The '300 patent is attached as Exhibit 5.

7.      The '588 patent is attached as Exhibit 6.

## PARTIES

8.      Plaintiff Daedalus is a company organized and existing under the laws of the State of Delaware with its address at 51 Pondfield Road, Suite 3, Bronxville, NY 10708.

9.      Daedalus alleges the following regarding Defendants upon information and belief.

10.     Defendant Mazda Motor Corporation is a company organized and existing under the laws of Japan with its address at 3-1 Shinchi, Fuchu-cho, Aki-gun, Hiroshima 730-8670 Japan.

11.     Defendant Mazda North American Operations is a company organized and existing under the laws of the State of California with its address at 200 Spectrum Center Drive, Suite 100, Irvine, CA 92618.

12.     Defendant Mazda Motor of America, Inc. is a company organized and existing under the laws of the State of California with its address as 200 Spectrum Center Drive, Suite 100, Irvine, CA 92618.

13.     Mazda Motor Corporation is a parent company of Mazda Motor of America, Inc.

14.     Defendant Mercedes-Benz Group AG is a company organized and existing under the laws of Germany with its address at 70456 Stuttgart, Germany.

2

15.     Defendant Mercedes-Benz AG is a company organized and existing under the laws of Germany with its address at Epplestraße 225, 70567 Stuttgart-Möhringen, Germany.

16.     Defendant Mercedes-Benz USA, LLC is a company organized and existing under the laws of the State of Delaware with its address at 1 Mercedes-Benz Drive, Sandy Springs, GA 30328.

17.     Mercedes-Benz Group AG is a parent company of Mercedes-Benz AG and Mercedes-Benz USA, LLC.

18.     Defendant Qualcomm Inc. is a company organized and existing under the laws of the State of Delaware with its address at 5775 Morehouse Drive, San Diego, CA 92121.

19.     Defendant Qualcomm Technologies, Inc. is a company organized and existing under the laws of the State of Delaware with its address at 5775 Morehouse Drive, San Diego, CA 92121.

20.     Qualcomm Inc. is a parent company of Qualcomm Technologies, Inc., which operates, along with its subsidiaries, substantially all of Qualcomm's engineering, research and development functions, and substantially all of its products and services businesses, including its QCT semiconductor business.

21.     Defendant Visteon is a company organized and existing under the laws of the State of Delaware with its address at One Village Center, Van Buren Township, MI 48111.

22.     Qualcomm's semiconductor chipsets are used in Visteon's automotive infotainment systems.

23.     Visteon's automotive infotainment systems are used in Mazda's automobiles.

24.     Visteon's automotive infotainment systems are used in Mercedes' automobiles.

## JURISDICTION AND VENUE

25.     This is an action for patent infringement under the patent laws of the United

States, 35 U.S.C. §§ 1, *et seq.*, including 35 U.S.C. §§ 271 and 281–85. This Court has subject

matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

26.     This Court has personal jurisdiction over each Defendant.

27.     Mazda has conducted and continues to conduct business in the State of Delaware

and in the District of Delaware. Mazda, upon information and belief, directly and/or through its

subsidiaries, agents, and/or contractors, makes or assembles products that are covered by the

subject matter of the Patents-in-Suit and that are and have been imported, offered for sale, sold,

purchased, and/or used within the District of Delaware. Mazda, upon information and belief,

directly or through intermediaries (including subsidiaries, distributors, retailers, contractors, and

others), purposefully and voluntarily ships, distributes, offers for sale, and/or sells infringing

products that are used by consumers in the District of Delaware. Additionally, Mazda, directly

and/or through distribution networks, regularly places infringing products within the stream of

commerce, with the knowledge and/or understanding that such products will be offered for sale,

sold, and/or used in the District of Delaware. Upon information and belief, Mazda has committed

acts of patent infringement within the State of Delaware and in the District of Delaware. Mazda

has purposefully availed itself of the benefits of the State of Delaware and the exercise of

jurisdiction over Mazda would not offend traditional notions of fair play and substantial justice.

28.     Mercedes-Benz USA LLC is incorporated in the State of Delaware. Thus,

Mercedes-Benz USA LLC resides within the State of Delaware and has consented to personal

jurisdiction within the District of Delaware.

29.     Mercedes-Benz Group AG and Mercedes-Benz AG have conducted and continue to conduct business in the State of Delaware and in the District of Delaware. Mercedes-Benz Group AG and Mercedes-Benz AG, upon information and belief, directly and/or through their subsidiaries, agents, and/or contractors, make or assemble products that are covered by the subject matter of the Patents-in-Suit and that are and have been imported, offered for sale, sold, purchased, and/or used within the District of Delaware. Mercedes-Benz Group AG and Mercedes-Benz AG, upon information and belief, directly or through intermediaries (including subsidiaries, distributors, retailers, contractors, and others), purposefully and voluntarily ship, distribute, offer for sale, and/or sell infringing products that are used by consumers in the District of Delaware. Additionally, Mercedes-Benz Group AG and Mercedes-Benz AG, directly and/or through distribution networks, regularly place infringing products within the stream of commerce, with the knowledge and/or understanding that such products will be offered for sale, sold, and/or used in the District of Delaware. Upon information and belief, Mercedes-Benz Group AG and Mercedes-Benz AG. have committed acts of patent infringement within the State of Delaware and in the District of Delaware. Mercedes-Benz Group AG and Mercedes-Benz AG have purposefully availed themselves of the benefits of the State of Delaware and the exercise of jurisdiction over Mercedes-Benz Group AG and Mercedes-Benz AG would not offend traditional notions of fair play and substantial justice.

30.     In the event that this Court does not have personal jurisdiction over Defendants MediaTek Inc., Mazda Motor Corporation, Mercedes-Benz Group AG, and/or Mercedes-Benz AG by virtue of the above information, this Court nonetheless has personal jurisdiction over those Defendants under Federal Rule of Civil Procedure 4(k)(2) because this case arises under federal law, those Defendants would not be subject to jurisdiction in any state's courts of general

jurisdiction, and those Defendants have purposefully availed themselves of the privilege of conducting business in the United States by making, using, offering to sell, and/or selling infringing products within the United States, and/or importing infringing products into the United States.

31.     Qualcomm Inc. is incorporated in the State of Delaware. Thus, Qualcomm Inc. resides within the State of Delaware and has consented to personal jurisdiction within the District of Delaware.

32.     Qualcomm Technologies, Inc. is incorporated in the State of Delaware. Thus, Qualcomm Technologies, Inc. resides within the State of Delaware and has consented to personal jurisdiction within the District of Delaware.

33.     Visteon is incorporated in the State of Delaware. Thus, Visteon resides within the State of Delaware and has consented to personal jurisdiction within the District of Delaware.

34.     Venue is proper in this District under 28 U.S.C. §§ 1391 and/or 1400(b).

## BACKGROUND

35.     Daedalus alleges the following regarding Defendants upon information and belief.

36.     Qualcomm provides semiconductor chipsets, including its Snapdragon 820 Automotive Platform semiconductor chipset, to various customers, including Visteon. Qualcomm has offices in the United States that use, offer to sell, and/or sell its semiconductor chipsets.

37.     Visteon incorporates Qualcomm's semiconductor chipsets into its automotive infotainment systems. Visteon's SmartCore technology integrates the Visteon infotainment systems using the Qualcomm Snapdragon 820 Automotive Platform semiconductor chipset.

Visteon has offices in the United States to use, offer to sell, and/or sell its automotive infotainment systems.

38.     Mazda incorporates the Visteon infotainment systems into Mazda's automobiles. For example, the Mazda CX-9 uses Mazda's *Connect* infotainment platform that incorporates the Visteon infotainment systems (that in turn incorporate Qualcomm's semiconductor chipsets).

39.     Mazda uses, offers to sell, and/or sells within the Unites States, and/or imports into the United States, its automobiles that incorporate the Visteon infotainment systems and Qualcomm semiconductor chipsets. Moreover, customers who purchase Mazda's automobiles use, offer to sell, and/or sell those automobiles with the Visteon infotainment systems and Qualcomm semiconductor chipsets within the United States.

40.     Mercedes incorporates the Visteon infotainment systems into its automobiles. For example, the Mercedes-Benz A-Class uses Visteon's SmartCore technology that integrates the Visteon infotainment systems (that in turn incorporate Qualcomm's semiconductor chipsets).

41.     Mercedes uses, offers to sell, and/or sells within the Unites States, and/or imports into the United States, its automobiles that incorporate the Visteon infotainment systems and Qualcomm semiconductor chipsets. Moreover, customers who purchase Mercedes' automobiles use, offer to sell, and/or sell those automobiles with the Visteon infotainment systems and Qualcomm semiconductor chipsets within the United States.

42.     This Complaint refers to any of Qualcomm's semiconductor chipsets, Visteon's automotive infotainment systems, and Mazda and Mercedes' automobiles incorporating those automotive infotainment systems and Qualcomm semiconductor chipsets as the "Accused Products."

## THE PATENTS-IN-SUIT

43.     The '833 patent is titled "Dynamically Allocating a Power Budget over Multiple Domains of a Processor" and issued on July 8, 2014, from U.S. Patent Application No. 13/780,066, filed on February 28, 2013. Daedalus is the sole owner and assignee of the entire right, title, and interest in the '833 patent and has the sole right to sue and recover damages for any current or past infringement.

44.     The '833 patent describes and claims a multi-domain processor that determines its power budget, allocates portions of the power budget to two different domains of the processor, and may control the frequencies of those two domains based on the allocated portions of the power budget. Claim 1 of the '833 patent recites:

A processor comprising:

> a first domain and a second domain, each of the first and second domains to operate at an independent voltage and frequency;

> a memory controller coupled to the first and second domains;

> at least one interface; and

> first logic to dynamically allocate a power budget for the processor between the first and second domains at run time according to a first sharing policy value for the first domain and a second sharing policy value for the second domain, the first and second sharing policy values controllable by user-level software.

45.     The '494 patent is titled "Power Budgeting between a Processing Core, a Graphics Core, and a Bus on an Integrated Circuit When a Limit Is Reached" and issued on November 25, 2014, from U.S. Patent Application No. 13/398,641, filed on February 16, 2012. Daedalus is the sole owner and assignee of the entire right, title, and interest in the '494 patent and has the sole right to sue and recover damages for any current or past infringement.

46.     The '494 patent describes and claims an apparatus, method, and system for efficiently balancing performance and power between processing elements based on measured

8

workloads.  If a workload of a processing element indicates that it is a bottleneck, then its performance may be increased.  However, if a platform or integrated circuit including the processing element is already operating at a power or thermal limit, the increase in performance is counterbalanced by a reduction or cap in another processing element's performance to maintain compliance with the power or thermal limit.  As a result, bottlenecks are identified and alleviated by balancing power allocation, even when multiple processing elements are operating at a power or thermal limit. Claim 1 of the '494 patent recites:

> A processor comprising:
>
>> an integrated circuit including:
>>
>>> a first core;
>>>
>>> a cache memory;
>>>
>>> a communication bus coupled to the first core, the communication bus to connect the first core and the cache memory;
>>>
>>> a core workload monitor configured to determine a core workload for the first core;
>>>
>>> a bus workload monitor configured to determine a bus workload for the communication bus; and
>>>
>>> balancing control adapted to receive the bus workload from the bus workload monitor and to dynamically tune power allocation between the first core and the communication bus based on a power limit for the integrated circuit and a comparison between the bus workload and a bus workload threshold, the power limit corresponding to a maximum thermal dissipation capacity for the integrated circuit, wherein a power consumption of one of the first core and the communication bus is to be reduced, the power consumption reduction to be limited to maintain operation of the one of the first core and the communication bus above a low limit.

47.    The '895 patent is titled "Providing Common Caching Agent for Core and Integrated Input/Output (IO) Module" and issued on February 21, 2017, from U.S. Patent Application No. 14/609,620, filed on January 30, 2015. Daedalus is the sole owner and assignee

of the entire right, title, and interest in the '895 patent and has the sole right to sue and recover damages for any current or past infringement.

48.     The '895 patent describes and claims a processor with a plurality of cores, a shared cache memory, an integrated input/output (IIO) module to interface between the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the IIO module. Claim 1 of the '895 patent recites:

> A processor comprising:
>
> > a plurality of cores, a shared cache memory, a memory controller to interface with a memory coupled to the processor, an integrated input/output (IIO) module to interface between the processor and an IO device coupled to the processor and a caching agent to perform cache coherency operations for the plurality of cores and the IIO module, wherein the processor is to receive an allocation transaction from the IO device and directly store data of the allocation transaction into the shared cache memory, wherein the caching agent is a single caching agent for the processor and includes a plurality of distributed portions each associated with a corresponding one of the plurality of cores.

49.     The '080 patent is titled "Asymmetric Performance Multicore Architecture with Same Instruction Set Architecture" and issued on August 14, 2018, from U.S. Patent Application No. 15/431,527, filed on February 13, 2017. Daedalus is the sole owner and assignee of the entire right, title, and interest in the '080 patent and has the sole right to sue and recover damages for any current or past infringement.

50.     The '080 patent describes and claims a method, device, and system that entails operating enabled cores of a multi-core processor such that both cores support respective software routines with a same instruction set, a first core being higher performance and consuming more power than a second core under a same set of applied supply voltage and operating frequency. Claim 1 of the '080 patent recites:

> A multi-core processor comprising:

a first plurality of cores and a second plurality of cores that support a same instruction set, wherein the second plurality of cores consume less power, for a same applied operating frequency and supply voltage, than the first plurality of cores; and

power management hardware to, from a state where the first plurality of cores and the second plurality of cores are enabled, disable all of the first plurality of cores for a drop in demand below a threshold without disabling any of the second plurality of cores, wherein an operating system to execute on the multi-core processor is to monitor a demand for the multi-core processor and control the power management hardware based on the demand.

51.    The '300 patent is titled "Controlling Operating Voltage of a Processor" and issued on August 27, 2019, from U.S. Patent Application No. 16/966,397, filed on April 30, 2018. Daedalus is the sole owner and assignee of the entire right, title, and interest in the '300 patent and has the sole right to sue and recover damages for any current or past infringement.

52.    The '300 patent describes and claims a method, device, and system comprising a processor that includes a core domain with a plurality of cores and a power controller including a first logic to receive a first request to increase an operating voltage of a first core of the core domain to a second voltage, to instruct a voltage regulator to increase the operating voltage to an interim voltage, and to thereafter instruct the voltage regulator to increase the operating voltage to the second voltage. Claim 1 of the '300 patent recites:

A system on chip (SoC) comprising:

a first unit including a first plurality of cores and at least one cache memory;

a second unit including a second plurality of cores and at least one other cache memory;

a coherent fabric to couple the first unit and the second unit; and

a power controller to receive a first request to increase an operating voltage to be provided to a first core of the first plurality of cores to a second voltage and, responsive to the first request, cause a voltage regulator to increase the operating voltage to an interim voltage, thereafter enable a second core of one of the first plurality of cores and the second plurality of cores to exit an inactive state and enter an active state, and thereafter enable an operating frequency of the first core to be increased.

53.     The '588 patent is titled "Enabling a Non-core Domain to Control Memory Bandwidth in a Processor" and issued on July 7, 2020, from U.S. Patent Application No. 16/249,103, filed on January 16, 2019. Daedalus is the sole owner and assignee of the entire right, title, and interest in the '588 patent and has the sole right to sue and recover damages for any current or past infringement.

54.     The '588 patent describes and claims a device and system comprising a processor with multiple domains including at least a core domain and a non-core domain that is transparent to an operating system (OS).  The non-core domain can be controlled by a driver.  In turn, the processor further includes a memory interconnect to interconnect the core domain and the non-core domain to a memory coupled to the processor.  Still further, a power controller, which may be within the processor, can control a frequency of the memory interconnect based on memory boundedness of a workload being executed on the non-core domain. Claim 1 of the '588 patent recites:

A processor comprising:

a plurality of cores including a first core operable at a first voltage and at a first frequency, and a second core operable at a second voltage independent of the first voltage and at a second frequency different from the first frequency;

graphics processing circuitry coupled to the plurality of cores to perform graphics operations, the graphics processing circuitry independently operable at a third frequency different from the first frequency and the second frequency; and

an interconnect to couple the graphics processing circuitry to a memory device, the interconnect operable at a fourth frequency different from the first, second, and third frequencies.

## COUNT I: INFRINGEMENT OF THE '833 PATENT

55.     Paragraphs 1 through 54 are incorporated by reference as if fully stated herein. Daedalus further alleges the below upon information and belief.

12

56.     Defendants have infringed and continue to infringe the '833 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, Qualcomm's semiconductor chipsets, for example, the Snapdragon 820 Automotive Platform semiconductor chipset, and products containing those chipsets.

57.     As demonstrated, for example, in Exhibit 7 attached hereto, Qualcomm's Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes' automobiles—infringe at least claim 1 of the '833 Patent.

58.     Defendants have had knowledge of the '833 patent since before this Complaint was filed, or at the minimum received notice of the '833 patent upon filing of this Complaint, and are aware of their infringement of the '833 patent.

59.     Defendants have induced infringement, and continue to induce infringement, of the '833 patent. Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '833 patent; with the knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the Accused Products; and with the knowledge and intent to encourage and facilitate the other parties' infringement through the distribution of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

60.     Defendants have also contributed to, and continue to contribute to, the infringement of the '833 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the

knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical information to their respective customers for the use of such products as a component of a patented system and/or apparatus for use in a patented process.

## COUNT II: INFRINGEMENT OF THE '494 PATENT

61.     Paragraphs 1 through 60 are incorporated by reference as if fully stated herein. Daedalus further alleges the below upon information and belief.

62.     Defendants have infringed and continue to infringe the '494 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States or importing into the United States Qualcomm's semiconductor chipsets, for example, the Snapdragon 820 Automotive Platform semiconductor chipset.

63.     As demonstrated, for example, in Exhibit 8 attached hereto, Qualcomm's Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes' automobiles—infringe at least claim 1 of the '494 Patent.

64.     Defendants have had knowledge of the '494 patent since before this Complaint was filed, or at the minimum received notice of the '494 patent upon filing of this Complaint, and are aware of their infringement of the '494 patent.

65.     Defendants have induced infringement, and continue to induce infringement, of the '494 patent. Defendants actively, knowingly, and intentionally induced, and continue to

actively, knowingly, and intentionally induce, infringement of the '494 patent; with the knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the Accused Products; and with the knowledge and intent to encourage and facilitate the other parties' infringement through the distribution of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

66.     Defendants have also contributed to, and continue to contribute to the infringement of the '494 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical information to their respective customers for the use of such products as a component of a patented system and/or apparatus for use in a patented process.

## COUNT III: INFRINGEMENT OF THE '895 PATENT

67.     Paragraphs 1 through 66 are incorporated by reference as if fully stated herein. Daedalus further alleges the below upon information and belief.

68.     Defendants have infringed and continue to infringe the '895 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, Qualcomm's semiconductor chipsets, for example, the Snapdragon 820 Automotive Platform semiconductor chipset.

69.     As demonstrated, for example, in Exhibit 9 attached hereto, Qualcomm's Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes' automobiles—infringe at least claim 1 of the '895 Patent.

70.     Defendants have had knowledge of the '895 patent since before this Complaint was filed, or at the minimum received notice of the '895 patent upon filing of this Complaint, and are aware of infringement of the '895 patent.

71.     Defendants have induced infringement, and continue to induce infringement, of the '895 patent. Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '895 patent; with the knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the Accused Products; and with the knowledge and intent to encourage and facilitate the other parties' infringement through the distribution of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

72.     Defendants have also contributed to, and continue to contribute to the infringement of the '895 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical

information to their respective customers for the use of such products as a component of a

patented system and/or apparatus for use in a patented process.

## COUNT IV: INFRINGEMENT OF THE '080 PATENT

73.     Paragraphs 1 through 72 are incorporated by reference as if fully stated herein.

Daedalus further alleges the below upon information and belief.

74.     Defendants have infringed and continue to infringe the '080 patent, either literally

or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by

making, using, offering to sell, and/or selling within the United States, and/or importing into the

United States, Qualcomm's semiconductor chipsets, for example, the Snapdragon 820

Automotive Platform semiconductor chipset.

75.     As demonstrated, for example, in Exhibit 10 attached hereto, Qualcomm's

Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products

containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes'

automobiles—infringe at least claim 1 of the '080 Patent.

76.     Defendants have had knowledge of the '080 patent since before this Complaint

was filed, or at the minimum received notice of the '080 patent upon filing of this Complaint,

and are aware of infringement of the '080 patent.

77.     Defendants have induced infringement, and continue to induce infringement, of

the '080 patent. Defendants actively, knowingly, and intentionally induced, and continue to

actively, knowingly, and intentionally induce, infringement of the '080 patent; with the

knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the

Accused Products; and with the knowledge and intent to encourage and facilitate the other

parties' infringement through the distribution of the Accused Products and/or the creation and

dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

78.     Defendants have also contributed to, and continue to contribute to the infringement of the '080 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical information to their respective customers for the use of such products as a component of a patented system and/or apparatus for use in a patented process.

## COUNT V: INFRINGEMENT OF THE '300 PATENT

79.     Paragraphs 1 through 78 are incorporated by reference as if fully stated herein. Daedalus further alleges the below upon information and belief.

80.     Defendants have infringed and continue to infringe the '300 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States or importing into the United States Qualcomm's semiconductor chipsets, for example, the Snapdragon 820 Automotive Platform semiconductor chipset.

81.     As demonstrated, for example, in Exhibit 11 attached hereto, Qualcomm's Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes' automobiles—infringe at least claim 1 of the '300 Patent.

82.     Defendants have had knowledge of the '300 patent since before this Complaint was filed, or at the minimum received notice of the '300 patent upon filing of this Complaint, and are aware of infringement of the '300 patent.

83.     Defendants have induced infringement, and continue to induce infringement, of the '300 patent. Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '300 patent; with the knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the Accused Products; and with the knowledge and intent to encourage and facilitate the other parties' infringement through the distribution of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

84.     Defendants have also contributed to, and continue to contribute to the infringement of the '300 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical information to their respective customers for the use of such products as a component of a patented system and/or apparatus for use in a patented process.

## COUNT VI: INFRINGEMENT OF THE '588 PATENT

85.     Paragraphs 1 through 84 are incorporated by reference as if fully stated herein. Daedalus further alleges the below upon information and belief.

86.     Defendants have infringed and continue to infringe the '588 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States or importing into the United States Qualcomm's semiconductor chipsets, for example, the Snapdragon 820 Automotive Platform semiconductor chipset.

87.     As demonstrated, for example, in Exhibit 12 attached hereto, Qualcomm's Snapdragon 820 Automotive Platform semiconductor chipset, and Defendants' other products containing that chipset—including Visteon's infotainment systems and Mazda and Mercedes' automobiles—infringe at least claim 1 of the '588 Patent.

88.     Defendants have had knowledge of the '588 patent since before this Complaint was filed or at the minimum received notice of the '588 patent upon filing of this Complaint, and are aware of infringement of the '588 patent.

89.     Defendants have induced infringement, and continue to induce infringement, of the '588 patent. Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '588 patent; with the knowledge and intent that parties other than themselves will use, offer to sell, and/or sell the Accused Products; and with the knowledge and intent to encourage and facilitate the other parties' infringement through the distribution of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to the Accused Products.

90.     Defendants have also contributed to, and continue to contribute to the infringement of the '588 patent by making, using, offering to sell, selling, and/or importing the Accused Products. Defendants make, use, offer to sell, sell, and/or import such products with the

20

knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, Defendants actively and knowingly sell the Accused Products and provide customer support, installation and instruction material, and/or other technical information to their respective customers for the use of such products as a component of a patented system and/or apparatus for use in a patented process.

## **PRAYER FOR RELIEF**

WHEREFORE, Daedalus prays for relief as follows:

A. Judgment that Defendants have infringed one or more claims of the Patents-In-Suit, both literally and under the doctrine of equivalents;

B. Defendants be ordered to account for and compensate Daedalus for Defendants' past infringement and any continuing or future infringement, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, together with pre-judgment and post-judgment interest on the damages awarded;

C. An award of enhanced damages under 35 U.S.C. § 284 to the extent that the Court deems appropriate;

D. An award of reasonable attorney fees pursuant to 35 U.S.C. § 285 to the extent that the Court deems this case is an exceptional case;

E. Injunctive relief in that Defendants, their affiliates, subsidiaries, officers, agents, servants, employees, and successors and assigns, and other persons who are in active concert or participation with anyone in the foregoing, be preliminarily and permanently enjoined from infringement of the Patents-in-Suit, including but not

limited to an injunction against making, using, offering to sell, selling within the United States, and importing into the United States, products that infringe the Patents-in-Suit;

F.   Costs of suit incurred herein; and

G.   Any and all other relief that the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff Daedalus demands a trial by jury on all claims and issues so triable.

Dated:  August 23, 2022

Of Counsel:

David J. Shaw
Tuhin Ganguly
Goutam Patnaik
David J. Cho
Elizabeth Connors
Desmarais LLP
1899 Pennsylvania Ave. NW Suite 400
Washington, DC 20006
(202) 451-4900 (Tel)
(202) 451-4901 (Fax)
dshaw@desmaraisllp.com
tganguly@desmaraisllp.com
gpatnaik@desmaraisllp.com
dcho@desmaraisllp.com
econnors@desmaraisllp.com

John M. Desmarais
Alan Kellman
Desmarais LLP
230 Park Avenue, 26th Floor
New York, NY 10169
(212) 351-3400 (Tel)
(212) 351-3401 (Fax)
jdesmarais@desmaraisllp.com
akellman@desmaraisllp.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiff Daedalus Prime LLC*